Tagged Opinion

ORDERED in the Southern District of Florida on Sept. 18 2008

Laurel Myerson Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                              CASE NO. 07-20712-BKC-LMI

THERESA M. PEREZ,                                   Chapter 13

   Debtor.
_____/

### ORDER GRANTING IN PART AND CONTINUING IN PART
### MOTION TO DISMISS OR CONVERT, ETC.

This matter came before me on August 27, 2008, on status conference regarding the Motion to Dismiss or Convert or, Alternatively, for Stay Relief (DE #72) (the "Omnibus Motion") filed by Creditor Kendall Healthcare Group Ltd. d/b/a Kendall Regional Medical Center ("Creditor") and Objection to Claim (DE #57) filed by the Debtor, Theresa Perez ("Debtor"). While the August 27 hearing was only a status conference, the parties agreed I could and should consider, and rule on, the issue of whether the Debtor is eligible to be a debtor under chapter 13.

## FACTS

The Debtor has or had a business called Allied Medical Products, Inc. ("Allied"). The Creditor operates as Kendall Regional Medical Center, an acute care facility. The Creditor has alleged that the Debtor, through Allied, conspired with employees of the Medical Center to create false invoices, pursuant to which Allied and the Debtor were paid $1,534,361 for products that were never ordered or received.

On June 6, 2007, the Creditor filed a multi-count complaint for injunctive relief and damages in the Circuit Court of Miami-Dade County, Florida against the Debtor, Allied, the Creditor's now former employees, and others. A temporary injunction was issued. In connection with the Debtor's motion to dissolve the injunction, the Debtor testified before the state court judge. At certain times during the Debtor's testimony the Debtor asserted her Fifth Amendment right against self-incrimination.

At some point in the late spring or early summer of 2008, three of the Creditor's former employees each plead guilty in federal court to conspiracy to commit wire fraud in connection with the scheme that resulted in the alleged $5,515,215 stolen from the Creditor.[1]

The Debtor filed this chapter 13 bankruptcy case on December 3, 2007. She filed her first Chapter 13 Plan on January 16, 2008 (DE #18). On February 19 and 20, respectively, both the Creditor and the Chapter 13 Trustee filed Objections to Confirmation of the Chapter 13 Plan (DE #25 and 26).[2] On April 2, 2008, the Debtor filed her First Amended Plan (DE #35), which was withdrawn, and then filed the Second

---

[1] Collectively the Creditor alleges its employees stole a total of $5,515,215 through various schemes, but only $1,534,361 is attributable to the alleged scheme with the Debtor and Allied.

[2] The Creditor's objection questioned the Debtor's eligibility to be in Chapter 13 based on the Debtor's lack of regular income but did not raise the issue of the amount of the Creditor's claim.

2

Amended Plan on June 4, 2008 (DE #45). The Trustee filed the Objection to Confirmation of the Second Amended Chapter 13 Plan on July 1, 2008 (DE #52). The Debtor then filed her Third Amended Chapter 13 Plan on July 2, 2008 (DE #54). The parties were before me on July 3, 2008, at which hearing the Creditor stated its continuing objection to confirmation of any plan proposed by the Debtor. One ground for the Creditor's continuing objection was that if the Creditor's claim is valid, "then this can't be a chapter 13 case." [Trans. of July 3, 2008 Hearing (DE #62), 5:19-20]. The Debtor argued that because the Creditor's claim was contingent, unliquidated and disputed as of the petition date, the amount of the claim, even if ultimately allowed, "doesn't matter." [Trans. of July 3, 2008 Hearing (DE #62), 5:24-6:2]. The parties agreed the case would not be ready for confirmation until the Creditor's claim is resolved. The Debtor filed an Objection to the Creditor's claim on July 11, 2008 (DE #57). On August 14, 2008, the Creditor filed the Omnibus Motion. I set the Objection to Claim and Omnibus Motion for status conference on August 27, 2008.

The Creditor argues the Debtor is not eligible to be a chapter 13 debtor because the Creditor's claim of $4,693,083[3], albeit disputed by the Debtor, unarguably causes the Debtor's unsecured debt to exceed the $336,900 limits of 11 U.S.C. §109(e). Again the Debtor counters that the Creditor's claim is contingent, unliquidated and disputed and, moreover, that the Creditor waived its right to raise the eligibility argument because the argument was not raised by the Creditor prior to filing the Omnibus Motion.

---

[3] The Creditor's claim includes the alleged amount stolen plus treble damages. Under Florida law, a party seeking damages for conversion may seek treble damages for conversion. However, prior to seeking treble damages, the creditor must send a written demand to the alleged wrongdoer, giving the wrongdoer an opportunity to return the converted funds. Fla. Stat. §772.11.

3

## **THE OBJECTION TO ELIGIBILITY WAS NOT UNTIMELY**

Although the Creditor's objection to the Debtor's first plan did not raise the issue of the Debtor's eligibility based on the amount of the Creditor's claim, the eligibility issue was raised and argued at the July 3, 2008, confirmation hearing. Subsequent to the hearing the Creditor filed its Omnibus Motion which motion once again raised the eligibility issue. The Debtor argues that because eligibility is not jurisdictional it can be waived, and since the Creditor raised the issue of eligibility in an untimely manner, the objection was waived. The Creditor counters that eligibility is jurisdictional and therefore it cannot be waived, whether or not the objection was timely. Both sides acknowledge there is a split of authority on this issue and no controlling Eleventh Circuit law. *See generally In re Verdunn*, 210 B.R. 621 (Bankr. M.D. Fla. 1997). Because I find the Creditor raised the issue of eligibility timely, I do not need to decide today whether eligibility to be a debtor is jurisdictional.

The Creditor filed its initial objection to confirmation within the time required by the Bankruptcy Rules and this Court's local rules.[4] The standing issue was raised at the only confirmation hearing that has been conducted in this case. No plan has been confirmed or could be confirmed unless the Creditor's claim is resolved. The timing of the objection has prejudiced neither the Debtor, the Trustee, nor any creditor. Consequently, under the particular circumstances of this case, I find the Creditor's objection was timely raised and not waived.

---

[4] Fed. R. Bankr. P. 3015(f) provides that objection to confirmation of a chapter 13 plan must be filed and served before confirmation of the plan. Local Rule 3015-3(B)(1)(b) of the Bankruptcy Court of the Southern District of Florida requires that an objection to confirmation be raised or filed at or prior to the 341 meeting. The 341 meeting was held on March 18, 2008, after the Creditor filed its objection. Moreover, when debtors file amended or modified chapter 13 plans, the court considers objections to those plans at the confirmation hearing since usually those amended or modified plans are filed subsequent to the 341 meeting.

## THE DEBTOR IS NOT ELIGIBLE TO BE A CHAPTER 13 DEBTOR

The Bankruptcy Code sets forth in section 109 who, or what, may be a debtor. 11 U.S.C. §109(e) states that:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and non-contingent, liquidated, secured debts of less than $1,010,650 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated unsecured debts that aggregate less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650 may be a debtor under chapter 13 of this title.

A debt will be included in the calculation for chapter 13 eligibility unless the underlying debt is contingent or unliquidated. A debtor's dispute of a claim does not disqualify the claim from inclusion in the section 109(e) eligibility calculation. *U.S. v. Verdunn (In re Verdunn)*, 89 F.3d 799 (11th Cir. 1996). Thus, the fact that the Debtor disputes the Creditor's claim is irrelevant.

Consequently, unless the Creditor's claim is either contingent or unliquidated it must be included for purposes of determining the Debtor's eligibility as a chapter 13 debtor. A contingent claim is a claim that has not ripened pre-petition, that is "[a] debt is non-contingent as long as the events that give rise to it occurred prior to the petition." *In re Farber*, 355 B.R. 362, 371 (Bankr. S.D. Fla. 2006). In the instant case, the Creditor's entire claim, including the conditions precedent to seeking treble damages, occurred prior to the Debtor's bankruptcy. Therefore, the Creditor's claim is not contingent.

An unliquidated claim is a debt in which the amount is uncertain.

> A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law. Therefore, the concept of a liquidated debt relates to the

> amount of liability, not the existence of liability. If the amount of the debt is dependent, however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated.

*In re Verdunn*, 89 F.3d at 802 (internal citations omitted).

> [I]t is well-settled that whether a debt is "liquidated" turns on whether the amount is "readily determinable":
>
> . . .
>
> The amount of debt is readily determinable only if the process of determining the claim is fixed, certain, or otherwise determined by a specific standard. . . .On the other hand, if the value of the claim depends on a "future exercise of discretion, not restricted by specific criteria, the claim is unliquidated."

*In re Adams*, 373 B.R. 116, 119-120 (10th Cir. B.A.P. 2007) (internal citations omitted). See also *In re McGovern*, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989) ("[A] claim is unliquidated when the finder of fact must rely upon its judgment to establish an appropriate amount to compensate for past and future injury.")

A debt arising from misappropriation of estate funds was liquidated because the amount of the debt could be easily calculated based on a special master's report. *In re Reader*, 274 B.R. 893 (Bankr. D. Colo. 2002). A debt arising from a personal representative's diversion of estate funds was liquidated because the missing amounts were "easily quantified" in an accountant's report, but the debt arising from tort claims was unliquidated because the calculation of damages were still subject to "a future exercise of discretion by the trier of fact." *In re Adams*, 373 B.R. at 122. See also *In re Knight*, 55 F.3d 231 (7th Cir. 1995) (amount of debt arising from unpaid traffic tickets was easily determined by referencing a demand letter sent to the debtor pre-petition).

In the instant case, the amount of the Creditor's claim is (a) not dependent on a future exercise of discretion, (b) is readily determinable and (c) is subject to

6

mathematical calculation. Although I did not conduct an evidentiary hearing, I did review the attachments to the Omnibus Motion, including the Debtor's sworn testimony before the state court judge and copies of the demand letters sent to the Debtor prior to the Debtor's bankruptcy[5]. The amount of the Creditor's claim is based on the amount demanded in the statutory demand letter, plus the statutory treble damages[6]. In her sworn testimony before the state court judge, the Debtor did not dispute the total amount of the checks that she or Allied had received from the Creditor - $1,548,900.36; the Debtor only disputed that she had not delivered product in exchange for those payments.

While the Creditor's witness admitted to the state court judge that "some product might have been received," the Creditor consistently has demanded a fixed amount rather than an unspecified damage amount. The Debtor may raise defenses to the amount – that is, the actual delivery of goods – but even the Debtor has not disputed the amount owed to the Creditor in the absence of such a defense. Based on the foregoing, I find that, for purposes of determining the Debtor's eligibility to be a chapter 13 debtor, the Creditor's claim is liquidated.[7]

Accordingly, it is hereby ORDERED AND ADJUDGED that the Debtor is not eligible to be a debtor under chapter 13 of the Bankruptcy Code. The Debtor has fifteen (15) days from the date of this order to convert or dismiss this bankruptcy case. If the case is converted, the parties will set a further status conference as soon as possible

---

[5] A binder enclosing these exhibits was handed up to me at the conclusion of the status conference without objection by the Debtor's counsel.

[6] The base dollar amount in the proof of claim is slightly lower than the demanded amount of $1,534,361; there is no explanation of the difference.

[7] Nothing in this opinion is intended to, or shall, prevent the Debtor from prosecuting her objection to the Creditor's claim, although the venue for that determination is subject to a Motion to Abstain on which I have not yet heard argument or ruled.

after the conversion at which status conference the Court will consider the Motion to Abstain.

###

Copies furnished to:
Andrew Herron, Esq.
Michael Frank, Esq.
Nancy Herkert, Esq.


*Attorney Herron shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*

8